IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| **BRENDA JOHNSON,** | § |
| | § |
| **Plaintiff,** | § CIVIL ACTION NO. 6:17-CV-00143-JDL |
| | § |
| v. | § |
| | § |
| **CITY OF TYLER, TEXAS** | § |
| | § |
| **Defendant.** | § |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's, City of Tyler, Texas ("the City" or "Defendant"), Motion for Summary Judgment. (Doc. No. 43.) Plaintiff Brenda Johnson ("Plaintiff") has filed a response (Doc. No. 50), to which Defendant has filed a reply (Doc. No. 51). Upon consideration of the parties' arguments, and for the reasons discussed herein, Defendant's Motion (Doc. No. 43) is **GRANTED-IN-PART** and **DENIED-IN-PART** as set forth herein.

## BACKGROUND

Plaintiff initiated this action on February 8, 2017, alleging violations of the Americans with Disabilities Act ("ADA") and the Family Medical Leave Act ("FMLA"). (Doc. No. 1.) Plaintiff was an employee for the City of Tyler for over twenty years until her termination on March 21, 2016. (Doc. No. 43, at 1; Doc. No. 50, at 3, Doc. Nos. 50-1, 50-2). Plaintiff was employed in the City's Neighborhood Services Department and was supervised by the Chief of Police, Gary Swindle ("Swindle"). (Doc. No. 43, at 1; Doc. No. 50, at 3, Doc. No. 50-3, Doc. No. 50-4, at 10:18–11:3.) In 2013, Plaintiff was diagnosed with lupus, which she disclosed to her Supervisor Swindle. (Doc. No. 50, Doc. No. 50-4, at 48:12–16.) In July 2015, Plaintiff requested

1

and was approved for leave under the FMLA. (Doc. No. 43, at 1; Doc. No. 50, Doc. No. 50-11.) Plaintiff returned to work from FMLA leave on October 5, 2015. (Doc. No. 43, at 1.)

Shortly thereafter that same month, Plaintiff made a request for accommodation pursuant to the ADA. (Doc. No. 43, at 1; Doc. No. 50, at 4, Doc. No. 50-17.) Plaintiff submitted her Reasonable Accommodation Request form on November 9, 2015. (Doc. No. 43, at 1; Doc. No. 50, at 4, Doc. No. 50-18.) Plaintiff made the following requests: (1) allow work from home as needed; (2) allow flexible work schedule; (3) reduce job stress; (4) provide more structure to assignments/deadlines; and (4) implement ergonomic workstation design. (Doc. No. 43-1, at 4.) Plaintiff's medical provider also listed the following accommodations: (1) allowing work from home 2-3 days per week and flexible work schedule; (2) improvement in the ergonomics of her workstation; (3) provide parking close to work site; (4) install low wattage overhead lights; and (5) replace florescent lighting with LED, halogen, or natural lighting. (Doc. No. 43-1, at 9.) Plaintiff and the City then engaged in an interactive process under the ADA and on January 26, 2016, Plaintiff and the City agreed on a restructured job. (Doc. No. 43-2.) The agreed job description stated the following with respect to Plaintiff's job duties:

- Responsible to Managing Director of Public Safety (or assigned Key Leader).

- Assigned office/duty hours will be 8:30 am to 5:30 pm. If you need to deviate from this schedule, you must notify your Key Leader and the NBS department (i.e. receptionist or Operations Manager) by phone, text or email at least an hour or as soon as possible in advance of any deviation that is not planned with an explanation about whether your inability to report to duty is related to your disability or illness, whether related to your disability or not.

- Serves as the liaison for the Neighborhood Services Department to other departments, and outside agencies (HUD); Represents the Neighborhood Services Department and the City at neighborhood meetings; provides a summary report to the Key Leader and carbon copy the NBS Operations Manager following neighborhood meetings.

- Develops and presents to City Council the Housing and CDBG/Home Annual and 5-year plans.

- Review NBS Business plan for accuracy and completeness consistent with administrative desires needs and HUD regulations.

- Provide highly responsible and complex administrative support (CDBG, Home, Housing, CHDO) to the Neighborhood Services Operations Manager to ensure implementation of the Annual and 5-year plans. A written report should be provided on the last work day of the month detailing what administrative support was performed (i.e. number files reviewed and in compliance, status on pending/ongoing projects etc…). The report will be sent to the Key Leader and carbon copy the NBS Operations Manager.

- Works with assigned Finance Department representatives, Key Leader and NBS Operations Manager to ensure HUD guidelines are followed related to the budget and the expenditure of all funds. Weekly written reviews and written notifications of any concerns or recommendations related to finance of NBS and the HUD Grants shall be provided. The weekly reviews and written notifications will be sent to Key Leader, NBS Operations Manager, and Finance liaison no later than 5 pm, each Friday.

- Participates in the development of the Neighborhood Services Department annual budget; Reviews monthly forecasts of funds needed for staffing, equipment, materials, and supplies; Recommends adjustments and monitors program expenditures to meet required HUD spending deadlines.

- Serves as the NBS representative and is required to attend: Veterans Roundtable, Homeless Roundtable, East Texas Human Needs Network, Neighborhood Revitalization Board and other meetings as assigned. Provides a summary report to the Key Leader and carbon copy the NBS Operations Manager following each meeting (report should be submitted by close of business the next business day). Serves as the quality control for the Community Housing Development Organization (CHOO) to ensure funds are used in accordance with the HUD rule. Provides a summary report to the Key Leader and carbon copy the NBS Operations manager following each meeting.

- Assists the NBS Operations Manager and other staff in the development and implementation of NBS goals, objectives, policies, and priorities for CDBG, HOME, and Housing. Serve as a policy and program advisor to the NBS Operations Manager, Key Leader, and City Manager. Review and prepare draft comments on proposed and current Federal, State and local regulations and trends with regard to their prospective impact on NBS programs. Suggest alternative courses of action, as applicable.

- • Serves as quality control by conducting at least five customer service, contractor and/or vendor feedback contacts a week. Document contacts and provide that information to Key Leader and NBS Operations Manager (weekly) by 5 pm, Friday.

- • Perform special projects and assume related responsibilities and duties, as assigned by the Key Leader and/or the City Manager.

(Doc. No. 43-2.)

From the time the new job description was agreed to on January 26, 2016 until the time she was terminated on March 21, 2016, Plaintiff worked from home a total of fourteen days as Plaintiff stated her body was adjusting to new medications. (Doc. No. 43-3.) The parties dispute the facts surrounding whether Plaintiff's accommodations were actually reasonable as well as Plaintiff's performance of her job duties and her ultimate termination, which will be discussed further herein.

## LEGAL STANDARD

A motion for summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The Supreme Court has interpreted the plain language of Rule 56 as mandating "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v.*

*Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex*, 477 U.S. at 323–25). A fact is material if it might affect the outcome of the suit under the governing law. *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Merritt-Campbell, Inc.*, 164 F.3d at 961. If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets this burden, Rule 56 requires the opposing party to go beyond the pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585 (1986); *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.

When ruling on a motion for summary judgment, the Court is required to view all justifiable inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *Merritt-Campbell, Inc.*, 164 F.3d at 961. However, the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as modified*, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a reasonable jury to return a

verdict in the opposing party's favor, there is no genuine issue for trial, and summary judgment must be granted. *Celotex*, 477 U.S. at 322–23; *Anderson*, 477 U.S. at 249–51; *Texas Instruments*, 100 F.3d at 1179.

## DISCUSSION

### I. ADA Claims

In her complaint, Plaintiff asserts a claim for failure to accommodate under the ADA and alternatively a claim for retaliation under the ADA. (Doc. No. 1, at 6–7.) Defendant has moved for summary judgment on these claims. (Doc. No. 43, at 7–12.)

The ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Plaintiff proceeds with her ADA claim under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792 (1973). Under the *McDonnell Douglas* approach, a plaintiff must demonstrate a prima facie case of discrimination. *Id.* To establish a prima facie case under the ADA, Plaintiff must show that (1) she is an individual with a disability within the meaning of the ADA; (2) she was qualified for her job; and (3) "an adverse employment decision was made solely because of her disability." *Owens v. Trane Co.*, 145 F.3d 360, 1 (5th Cir. 1998) (citing *Rizzo v. Children's World Learning Ctrs., Inc.*, 84 F.2d 758, 763 (5th Cir. 1996)). If the plaintiff succeeds in establishing her prima facie case, then the defendant must articulate a legitimate, nondiscriminatory reason for the termination. *E.E.O.C. v. LHC Grp., Inc.,* 773 F.3d 688, 694 (5th Cir. 2014). Finally, the burden shifts back to the plaintiff to show that defendant's proffered reason is pretextual. *See id.* In the summary judgment context, a case of discrimination plus a showing that the proffered reason is pretextual is typically enough to survive summary judgment. *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–48 (2000)).

### a. Failure to Accommodate

Discrimination includes failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless such covered entity can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A). To prevail on a claim for failure to accommodate under the ADA, Plaintiff must show that: (1) she is a "qualified individual with a disability;" (2) the disability and its consequential limitations were "known" by the covered employer; and (3) the employer failed to make "reasonable accommodations" for such known limitations. *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013).

As to her failure to accommodate claim, the only dispute between the parties is whether the City of Tyler failed to make reasonable accommodations.[1] The City contends that it provided Plaintiff with reasonable accommodations in the agreed-to job description because it argues that she was provided flexible hours and the ability to work from home. (Doc. No. 43, at 8.) The City argues that it placed no limit on the days in which she could work from home, only required her to notify her Key Leader in advance with an explanation of whether it related to her disability, and that Plaintiff actually worked from home 14 days during the two-month period prior to her termination. *Id.* at 9. The City argues that Plaintiff's request for an automatic 2–3 days working from home each week was arbitrary and unreasonable because her "lupus flares" could not be predicted. *Id.* at 10. Further, the City maintains that under the job description she could have actually worked from home five days a week if she followed protocol. *Id.* at 11. Ultimately, the City argues that no reasonable jury could find that the City failed to reasonably accommodate Plaintiff's request for flexible work hours when it signed a document allowing her to deviate

---

[1] The City does not dispute that Plaintiff was a qualified individual with a disability or that it had knowledge of her disability. *See, e.g.,* Doc. No. 50-4, at 48:12–16.

from her normal work hours of 8:30 A.M. to 5:30 P.M. upon providing notice. *Id.* While Plaintiff disputes that the accommodations in her employment agreement were in fact reasonable, Plaintiff primarily argues that she has established a prima facie case for disability discrimination under the ADA. (Doc. No. 50, at 5–11.)

As discussed above, the City does not dispute that Plaintiff can meet the elements of her claim other than to argue that it provided Plaintiff with reasonable accommodations. Plaintiff spends the majority of the response arguing a retaliation claim, which is alternatively pled in her complaint.[2] (Doc. No. 50, at 5–11; Doc. No. 1, at 7.) Plaintiff admits that she does not allege that the City failed to engage in an interactive process. (Doc. No. 50, at 11–12.) In fact, as to reasonable accommodation, Plaintiff only argues that requiring her to work a schedule was setting her up for failure. (Doc. No. 50, at 9.)

Here, the evidence submitted on summary judgment with respect to Plaintiff's failure to accommodate claim includes documentation that Plaintiff signed an agreed job accommodation request with her employer after an undisputed interactive process took place. (Doc. No. 42-3.) Plaintiff does not provide evidence of a disputed material fact to allow this claim to survive summary judgment. While Plaintiff simply asserts the job description was setting her up for failure by requiring a schedule, Plaintiff does not dispute that she agreed to those terms, which also provided her the flexibility to work from home upon request as well as ergonomic workplace conditions, and does not contend that she was somehow coerced into agreement.

---

[2] At the hearing on Defendant's motion for summary judgment on May 10, 2018, the parties indicated that during the preparation of the proposed jury charge there was confusion as to whether Plaintiff was asserting a discrimination claim under the ADA. From the Court's perspective upon review of the Complaint (Doc. No. 1), what has been alleged is a retaliation claim, and Plaintiff ultimately agreed with this conclusion at the hearing. Therefore, for the reasons discussed herein, the only ADA claim that will proceed to trial is a retaliation claim under the ADA.

Moreover, Plaintiff has not provided any evidence that the City failed to comply with the agreed accommodations.

Plaintiff has not provided any competent evidence to survive summary judgment on the grounds that the City failed to provide reasonable accommodations—indeed Plaintiff does not even really argue this point but instead asserts that she was demoted and terminated on the basis of her disability. Because Plaintiff has failed to respond to the City's summary judgment evidence that Plaintiff was provided with reasonable accommodations, summary judgment as to Plaintiff's failure to accommodate claim is appropriate.[3]

    **b. Retaliation**

As to her claim for retaliation under the ADA, the City argues that Plaintiff cannot make out her prima facie case as she has failed to show a causal link between the protected activity and the adverse employment action. (Doc. No. 51, at 1.) The City further argues that even if Plaintiff can make a prima facie case for retaliation under the ADA, it had a non-pretextual reason for terminating Plaintiff based on her poor work performance. (Doc. No. 43, at 12–15.)

To establish a prima facie case of retaliation under the ADA, a plaintiff must show that (1) she engaged in a statutorily protected activity; (2) the employer took an adverse action against her; and (3) there was a causal connection between the adverse action and the protected activity. *Feist*, 730 F.3d at 454. Again, the City does not dispute the first two elements of Plaintiff's prima facie case but only disputes whether a causal link can be shown. (Doc. No. 51, at 1.)

---

[3] As discussed at the pretrial conference, and further discussed herein, evidence regarding the accommodations provided by the City relevant to Plaintiff's retaliation claim based upon her request for accommodations will not be precluded.

9

As to causation, Plaintiff argues that the timing of her demotion and termination after her request for leave and accommodation create a genuine issue of material fact on her ADA claim. (Doc. No. 50 at 10.) The City contends that the temporal proximity of Plaintiff's termination is insufficient to create a causal link under Fifth Circuit case law. (Doc. No. 51, at 1–2.) There is an inference of causation when an adverse employment action occurs in close temporal proximity to the protected conduct. *Richard v. Cingular Wireless, LLC*, 233 Fed. Appx. 334, 338 (5th Cir. 2007). A plaintiff need not prove her protected activity was the sole factor motivating an employer's challenged decision. *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001). However, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job action began well before the plaintiff had ever engaged in any protected activity an inference of retaliation does not arise." *Finch v. Texas Health & Human Serv. Comm'n*, No. H-13-3716, 2015 WL 5674834, at *6 (S.D. Tex. Sept. 25, 2015) (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001).

Here, on October 26, 2015, Plaintiff met with the City to request accommodations under the ADA, and on November 9, 2015, Plaintiff submitted her documentation to the City to request reasonable accommodations. (Doc. No. 43, at 1; Doc. No. 43-1; Doc. No. 50-17.) The timing from Plaintiff's official submission of her request for accommodation under the ADA[4] to her termination on March 21, 2016 was just over four months. More narrowly, Plaintiff's new job description with her accommodations commenced on January 26, 2016, just under two months before Plaintiff was terminated. (Doc. No. 43-2.) The timing of these events are closer than the City argues and closer than the cited case law. *See* Doc. No. 51, at 2, citing *Raggs v. Mississippi*

---

[4] The Fifth Circuit has stated that "making a request for a reasonable accommodation under the ADA may constitute engaging in a protected activity," *Tabatchnik v. Cont'l Airlines*, 262 F. App'x. 674, 676 (5th Cir. 2008), and the City does not dispute that this request constituted protected activity.

*Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002) (arguing that the Fifth Circuit has held that a five month lapse is not close enough). Moreover, the City does not dispute that Plaintiff had no record of prior disciplinary action in over twenty years on the job. Indeed, the City does not cite to any evidence of a warning prior to termination or any gradual adverse action that was taken based on Plaintiff's failure to perform her job duties—the basis for the City's alleged nondiscriminatory reason for Plaintiff's termination. Further, Plaintiff submits evidence of positive performance reviews and pay raises prior to her termination. *See* Doc. Nos. 50-5, 50-7 (stating "Employee's accomplishments are recognized and celebrated by the entire staff."). In this way, the instant circumstances are distinguishable from the *Atkins* case upon which the City relies in support. *See* Doc. No. 51, at 2, *citing Atkins v. Southeast Cmty. Health System*, 712 F. App'x. 388, 391–92 (5th Cir. 2017).

In *Atkins*, the plaintiff had only provided bare allegations to support a causal link where she was terminated nearly ten months after engaging in protected activity and the evidence showed she had abused her access to the employer's online system to provide free prescription drugs to family and friends. *Id.* Here, Plaintiff was terminated just four months after making a request for accommodations and two months from the implementation of her new job description affording her accommodations. Moreover, Plaintiff had seemingly positive performance reviews prior to her request for accommodations and did not receive any disciplinary or gradual adverse action prior to this time.

Ultimately, based on the close proximity of Plaintiff's engagement in protected activity to the timing of her termination, as well as evidence to support her otherwise satisfactory performance of her job duties and absence of a prior disciplinary record, a reasonable jury could

draw an inference that Plaintiff was terminated because of her request for accommodations. Therefore, there remains a triable issue of fact as to a claim for retaliation under the ADA.

Finally, a genuine issue of material fact remains as to whether the City's alleged non-discriminatory basis for terminating Plaintiff was pretextual. The City contends that it terminated Plaintiff because of poor work performance. (Doc. No. 43, at 12–15.) Specifically, the City alleges that Plaintiff did not use correct forms for her feedback contacts, did not fully fill out the forms, did not timely turn in forms, and did not perform the contacts herself, which she allegedly misrepresented. (Doc. No. 43, at 14, citing Doc. Nos. 43-5, 43-7.) Plaintiff cites to her performance reviews and pay raises. (Doc. No. 50, at 15–16; Doc. Nos. 50-5, 50-7.) Plaintiff further points out that the City has a progressive disciplinary policy that is part of the record and that Plaintiff was never disciplined or warned prior to her termination. *Id.* at 16. As to the City's specific allegations, Plaintiff argues that the alleged "incorrect" form was a form approved by Swindle for years, and that any alleged misrepresentation regarding the scheduling of a meeting with city Councilman Warren did not occur and Swindle admitted as much in his deposition. (Doc. No. 50, at 9.) On these points, the City argues that Swindle "coached" Plaintiff on how to correctly do her job and that the City's Policy is not a progressive disciplinary one because Plaintiff was an at-will employee who could be terminated at any time. (Doc. No. 51, at 7.) Specifically, the City argues that the progressive disciplinary portion of the policy states "may" not "shall," and that therefore such action was not required. *Id.* citing Doc. No. 50-20, at 7.

Here, both parties cite to conflicting evidence regarding the performance of Plaintiff's job duties. (Doc. No. 43-5; Doc. Nos. 50-5, 50-7.) Moreover, although Plaintiff was an at-will employee, the City does not dispute that it has a progressive disciplinary policy, only that it was not necessarily required to be implemented since the policy says "may" not "shall." *See* Doc. No.

50-20, at 7 ("City may undertake progressive disciplinary action whenever possible in responding to an employee's disciplinary conduct, however City retains the option to terminate promptly any employee for any offense which warrants disciplinary action.") Based on this evidence, the Court cannot conclude that no reasonable jury could infer that the City's basis for terminating Plaintiff was pretextual. *See Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 477 (5th Cir. 2015) quoting *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 354 n. 29 (5th Cir.2005) (noting that even the non-mandatory nature of a progressive discipline plan did "not eliminate the inference of pretext raised by [the] failure to follow an internal company policy specifically stating that it should be 'followed in most circumstances'"). Here, although the City's progressive disciplinary policy is non-mandatory, it clearly states it will be undertaken "whenever possible." (Doc. No. 50-20, at 7.) For these reasons, the Court finds that summary judgment would not be appropriate on Plaintiff's retaliation claim.

For the reasons discussed herein, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's claim for failure to provide reasonable accommodations under the ADA. Defendant's Motion for Summary Judgment is **DENIED** as to Plaintiff's retaliation claim under the ADA.

### II. FMLA Claim

In her complaint, Plaintiff also alleges a claim for retaliation under the FMLA. (Doc. No. 1, at 7.) The City again moves for summary judgment on the grounds that Plaintiff cannot establish a prima facie case for retaliation under the FMLA, and that even if she could, the City had a legitimate non-discriminatory basis for terminating her employment. (Doc. No. 43, at 12–16.) "The Fifth Circuit applies the *McDonnell Douglas* framework to analyze retaliation claims under the FMLA, noting that there is no significant difference between such claims under the

FMLA and similar claims under other antidiscrimination laws." *Hunt v. Rapides Healthcare Sys.*, 277 F.3d 757, 768 (5th Cir. 2001) (internal citations omitted).To make a prima facie case for retaliation under the FMLA, a plaintiff must show that: (1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and that (3) either (a) she was treated less favorably than an employee who had not requested leave under the FMLA or (b) the adverse decision was made because she took FMLA leave. *Elsensohn v. St. Tammany Parish Sheriff's Office,* 530 F.3d 368, 372 (5th Cir. 2008). Once the plaintiff makes a prima facie showing, the burden shifts to the defendant to articulate a legitimate nondiscriminatory or nonretaliatory reason for the employment action. *Hunt,* 277 F.3d at 768; *Richardson v. Monitronics Intern., Inc.,* 434 F.3d 327, 332 (5th Cir. 2005). Once the defendant makes this showing, the burden shifts back to the plaintiff to show by a preponderance of the evidence that the employer's reason is pretextual. *Id.*

Again, the parties' only dispute is whether there is a causal connection to show that Plaintiff was terminated because she sought protection under the FMLA. The City argues that Plaintiff has no evidence to show she was terminated because she took FMLA leave and that she testified to this. (Doc. No. 43, at 16–17.) The City also argues that there is ample evidence that she was terminated due to poor work performance. *Id.* at 16. Plaintiff responds regarding her demotion and argues that while she was on leave she was replaced as Manager of Neighborhood Services by Larry Everett and that when she returned she was demoted from that position. (Doc. No. 50, at 14.) Further, Plaintiff argues that the timing of her termination and her request for leave under the FMLA are compelling when coupled with her glowing performance reviews and the fact that she was never disciplined. *Id.* The City points out that Plaintiff has not alleged or

pled any facts related to failure to restore under the FMLA or her alleged demotion. (Doc. No. 51, at 8–10.)

Here, Plaintiff has not pled an entitlement or failure to restore claim. The entirety of this allegation is contained in Paragraph 37 of Plaintiff's complaint, which states: "[t]he entitlement clause provides a series of entitlements which give certain rights to employees such as the right to have their job back once they return from a qualified leave." (Doc. No. 1, at ¶ 37.) This allegation provides nothing more than a bare recitation of a legal conclusion with no facts to support Plaintiff's claim under the FMLA. In fact, the paragraph immediately following this assertion only discusses Plaintiff's termination. *Id.* at ¶ 38. The City contends it was unaware of this claim and that it never came up during discovery, which is why it was not even addressed in the summary judgment motion. Plaintiff has never asked for leave to amend the complaint and these conclusory allegations are insufficient. *See* Fed.R.Civ.P. 8 (stating that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." ); *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 545 (2007) (interpreting Rule 8); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684–85 (2009) (applying *Twombly* generally to civil actions pleaded under Rule 8). Moreover, even if this claim had been sufficiently pled, the undisputed testimony from Plaintiff given during her deposition was that she was restored to her former position. (Doc. No. 51-2, January 3, 2018 Deposition of Brenda Johnson at 137:5–138:1.) Therefore, summary judgment as to Plaintiff's entitlement claim is warranted.

As to the retaliation claim, the parties dispute causation based on timing and other circumstances surrounding Plaintiff's termination.[5] Here, Plaintiff commenced her FMLA leave in July 2015 and returned on October 5, 2015. (Doc. No. 43, at 1.) Plaintiff was subsequently terminated on March 21, 2016, just over five months after returning from leave. *Id.* at 3. The parties present the same arguments regarding the timing of termination as discussed with respect to Plaintiff's ADA claim. Here, the only difference is a slightly longer time had passed (five months) from the time of FMLA leave until the time of termination. While the lengthier timing makes the temporal proximity slightly less suspect, given Plaintiff's performance record and the lack of disciplinary action discussed herein, a reasonable jury could infer that she was terminated as a result of her leave under the FMLA. Finally, for the same reasons discussed with respect to Plaintiff's ADA claim, a genuine issue of material fact exists with respect to whether the City's reason for firing Plaintiff was pretextual. Accordingly, summary judgment as to Plaintiff's retaliation claim under the FMLA is not warranted.

For the reasons discussed herein, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's claim for entitlement under the FMLA. Defendant's Motion for Summary Judgment is **DENIED** as to Plaintiff's retaliation claim under the FMLA.

## CONCLUSION

Defendant's Motion for Summary Judgment (Doc. No. 43) is **GRANTED-IN-PART** and **DENIED-IN-PART** as set forth herein. Within **7 days** of the issuance of this Order, the parties shall resubmit proposed jury instructions and a proposed verdict form based upon the rulings

---

[5] As discussed earlier, and at the pretrial hearing in this matter, Plaintiff has not alleged a failure to restore claim, but the Court is not precluding evidence related to her job title or change in job title as it is relevant to Plaintiff's retaliation claim. However, Plaintiff has not alleged demotion as an adverse employment action.

herein and the rulings made at the Court's pretrial conference contained in the Court's pretrial order.

**So ORDERED and SIGNED this 10th day of May, 2018.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE